ALBANY,
Feb. 1811.

DE DIEMAR
v.
VAN
WAGENEN.

DE DIEMAR and WIFE *against* VAN WAGENEN.

*A.* having made his will, died in *New-York,* leaving *B.* and *C.* his surviving children and residuary legatees. *B.* took out administration with the will annexed, and died, leaving goods; &c. of *A.* unadministered, and particularly a large debt due from *D.* to the estate of *A.* in *England.* It was covenanted and agreed between *E.*, administrator of *B.*, and *C.*, who resided in *England,* that *E.* should release to *C.* all right to the goods of *A.* in *England,* and empower *C.* to take out administration in *England* on the goods, &c. of *A.*, and to indemnify *C.* from all legacies, actions, &c. in consequence of taking out such administration in *England;* and *C.* covenanted to account to *A.* for all moneys she should receive of *D.*, and *E.* covenanted, that in case *C.* could not obtain administration in *England,* or in case, after obtaining such administration, *D.* should refuse to account for all moneys due from him to the estate of *A.*, and pay the same within one month after notice and request to him from *C.*, that *E.*, as administrator of *B.*, would pay and satisfy to *C.* all her full share of the real and personal estate of *A.*, her father, &c. *C* obtained administration in *England* of the goods, &c. of *A.*, and demanded payment of the debt due from *D.*, who being before and at that time insolvent, and unable to pay, offered to pay *C.* the amount of the principal of the debt due to the estate of *A.*, exclusive of the interest which had accrued, if *C.* would acquit and discharge him from all further demands, but otherwise he would not pay; and *C.*, as most advantageous to the estate of *A.*, accepted the offer, and received the principal of the debt from *D.* without the interest, and thereupon released and discharged him. In an action of covenant brought by *C.* against *E.* on the agreement to recover her share of the estate of *A.*, it was held, that the release by *C.* of the debt due of *D.* to the estate of *A.*, was a good defence; that *C.* by the agreement was to take out administration in *England,* solely for the purpose of collecting the debt due from *D.*, and had no discretion to compound for the same, or release any part of it; and by so compounding and releasing *D.*, *C.* had taken the debt upon herself, and had failed to perform the condition precedent to her right of action against *E.* the administrator of *B.* under the agreement.

THIS was an action of covenant. The declaration set forth a certain indenture, made the 6th of *March,* 1800, between *Ann Griffiths, Gerrit H. Van Wagenen,*

the defendant, and *Thomas Hook*, of the city of *New-York*, of the one part, and *Frederick De Diemar* and *Cornelia* his wife, of the city of *London*, of the other part; which recited, that *Ann Griffiths* was the widow of *Joseph Griffiths*, deceased, of the city of *New-York*, who was one of the children and residuary legatees, and sole administrator with the will annexed, of *John Griffiths*, his father, late of the same city, deceased; that *John Griffiths*, by his last will, dated the 13th of *March*, 1764, bequeathed to his wife the rents and profits of his estates, both real and personal, during her life, and after her death, devised his real and personal estate to his children, and the survivors and survivor of them, in equal portions. The testator died in *November*, 1784, leaving four children, two of which soon after died, and the widow died in *September*, 1789, leaving *Joseph* and *Cornelia* the survivors. All the executors named in the will died, without proving the will; and administration with the will annexed, was granted, at *New-York*, in *November*, 1789, to *Joseph Griffiths*, who died intestate, the 13th of *December*, 1796, leaving goods, chattels, and credits of *John Griffiths*, at the time of his death, unadministered, and particularly a large sum of money, in the hands of *Thomas Pomeroy*, of the city of *London*, merchant.

Letters of administration on the estate of *Joseph Griffiths*, deceased, were granted at *New-York*, to *Ann Griffiths*, *Garrit Van Wagenen* and *Thomas Hook*; and *Cornelia*, one of the plaintiffs, remained the only surviving child of *John Griffiths*.

There being no personal representative of *John Griffiths*, who could collect and receive the moneys due to his estate from *Thomas Pomeroy*, the administrators of *Joseph Griffiths* came to an agreement with the plaintiffs to enable *Cornelia De Diemar* to take out letters of administration, with the will annexed, in *England*, of the goods and chattels of *John Griffiths*, her father, not yet administered, and to indemnify her, &c. The indenture

then witnessed, that *Ann Griffiths, G. H. Van Wagenen,* and *Thomas Hook,* released to *Cornelia De Diemar* all the right, &c. whatsoever, of them, or either of them, to the unadministered estate and effects of *John Griffiths,* deceased, in *Great Britain,* and they authorized and empowered, as far as in them lay, the said *Cornelia* to take out of the prerogative court of *Canterbury,* or some other proper court in *Great Britain,* letters of administration, with the will annexed, of all the goods, chattels and credits of *John Griffiths,* then unadministered, in such manner as the said *Cornelia* should deem proper and be advised; and they further covenanted to indemnify the plaintiffs from the payment of all debts and legacies due from the estate of *John Griffiths,* and all actions, &c. by reason of the said *Cornelia's* taking out such letters of administration, &c. And the plaintiffs covenanted, that whatever moneys should be obtained by them, or either of them, from the said *Thomas Pomeroy,* due to the estate of *John Griffiths,* (deducting all costs and expenses, &c.) should be allowed in account with the said *Ann Griffiths, Gerrit Van Wagenen,* and *Thomas Hook,* touching the part and share of the said *Cornelia* in the rent and personal estate of *John Griffiths.*

And the said *Ann Griffiths, G. H. Van Wagenen,* and *T. Hook,* further covenanted and agreed, that in case the said *Cornelia* could not take out letters of administration in *England,* on the goods of the said *John Griffiths,* or in case she should obtain such administration, and the said *Thomas Pomeroy,* his executors, &c. should neglect or refuse to account for all moneys justly due from him to the estate of the said *John Griffiths,* and to pay the same over to the plaintiffs, in the space of one month next after request by them thereof made, then and in such case, the said administrators of *Joseph Griffiths* covenanted to satisfy and pay to the said *Cornelia* all her full part and share of the real and personal

estate of her father, the said *John Griffiths*, and of the rents, issues, interest and profits thereof, &c.

The plaintiffs then averred that the share of *Cornelia*, in the estate of her father, amounted to a large sum, to wit, 25,000 dollars; that she did take out letters of administration in *England*, &c. and gave notice thereof to the said *Thomas Pomeroy*, and requested him to pay to the plaintiffs the moneys justly due from him to the estate of *John Griffiths*, amounting to a large sum, to wit, 10,000 dollars; and though the said *Pomeroy* paid to the plaintiffs part of the debt, to wit, 2,000 dollars, yet he did not and would not account for the residue, nor pay the same to the plaintiffs, within the space of one month next after such request made to him, nor at any other time, and the same still remains due and unpaid; that the costs and expenses of obtaining administration amounted to 1,000 dollars, and that, after deducting the said sum for costs and charges, the plaintiffs are ready and willing to allow the residue of the moneys so received of the said *Thomas Pomeroy*, to wit, 1,000 dollars, in account with the said administrators of *Joseph Griffiths*, touching the share of the said *Cornelia* in the estate of her father, the said *John Griffiths*, &c. of all which notice was given to the said administrators, in the life-time of *Ann Griffiths* and *Thomas Griffiths*, who have since died, leaving the defendant the only surviving administrator of the said *Joseph Griffiths;* and the plaintiffs did request the said administrators, in the life-time of the said *Ann* and *Thomas*, and the defendant, since their death, to pay to the said *Cornelia* her share of her father's estate, &c. And although the plaintiffs have performed all things, &c. yet the said administrators, in the life-time of the said *Ann* and *Thomas*, and the defendant, since their death, did not, when so requested, &c. pay, and hath ever since refused to pay to the said *Cornelia* her share of her father's estate, &c.

The defendant pleaded three pleas: 1. That *Cornelia*

*De Diemar* did not obtain letters of administration in due form of law, in *Great Britain*, of the goods, &c. of *John Griffiths*, &c. on which *issue* was joined. 2. That she did not give notice to *Thomas Pomeroy*, and request him to pay, &c. on which *issue* was joined. 3. That on the 11th of *July*, 1800, *Thomas Pomeroy* accounted for and paid to the plaintiffs a large sum of money, to wit, 5,602 dollars and 19 cents, as being the amount then justly due from him to the estate of *John Griffiths*, and that the plaintiffs accepted the same as the amount then justly due to the said estate, and discharged and acquitted the said *Thomas Pomeroy* from any further accounting with them, and did not then, or at any other time, require the said *T. P.* to account for or pay any further sum, when, in fact, a much larger sum, to wit, 10,000 dollars, was then due from the said *T. P.*, and ought to have been accounted for to the plaintiffs.

The plaintiffs replied to the *third* plea, *protesting* that the said *T. P.* never accounted for or paid to the plaintiffs the sum of 5,602 dollars and 19 cents, &c. that on the 14th of *September*, 1786, the said *Thomas Pomeroy* became wholly insolvent, and unable to pay his just debts; and that, at the time of making the said indenture, &c. and ever since, he hath been wholly insolvent and unable to pay his just debts, and it was then, and hath ever since been, impossible for the plaintiffs to recover and receive of the said *T. P.* the full amount of all the moneys which were justly due from him to the estate of *John Griffiths;* but the said *Thomas* was willing, and on the 11th of *July*, 1800, offered, to pay the plaintiffs such sum as, with other payments before made on account of moneys due from him to the estate of the said *John Griffiths*, would make up the full amount of all the principal sum, exclusive of the interest thereon accrued, so due from him to the said estate, on condition that the plaintiffs would acquit and discharge him from any further accounting with them; and that

without such discharge he would not pay; and the plaintiffs could not have recovered from him any part of the moneys due to the said estate; whereupon it became and was beneficial to the estate of the said *John Griffiths*, and to the defendant, to accept the offer so made by the said *T. P.*, and receive the sum of money tendered, and to discharge him from any further accounting, and thereupon the plaintiffs, after taking out letters of administration, &c. received of the said *T. P.* the sum of 2,084 dollars and 22 cents, being the full amount of all the principal, exclusive of interest, then due from the said *T. P.* to the said estate, and did thereupon acquit and discharge the said *T. P.* from further accounting with them, &c. *Without this*, that the plaintiffs ever accepted the said sum of 5,602 dollars and 19 cents, mentioned in the third plea, or any other sum, as the amount justly due from the said *T. P.* to the said estate.

To this replication there was a general demurrer and joinder.

*Robinson*, in support of the demurrer. The replication expressly avers that *Pomeroy* was acquitted and discharged; and it must be inferred that this was a legal and effectual discharge, or a release under seal, so as to bar all future claim. The debt must be extinguished by such release, which must be binding and conclusive, as Mrs. *De Diemar* was the residuary legatee, and administratrix with the will annexed. An administrator cannot release a debt without a *devastavit :** and he makes himself liable for the whole debt. Is there any thing in this case to take it out of this general and well settled rule of law? The object of the agreement was to save the plaintiffs from costs, and to secure them, in case they should fail in recovering the debt, after a *bona fide* attempt for that purpose, in *England*. There is nothing in the agreement which authorizes

ALBANY,
Feb 1811.

DE DIEMAR
v
VAN
WAGENEN.

\* Bac. Abr.
Ex. & Adm.
(L) Cro. Eliz.
43. 1 Vernon,
474.

the plaintiffs to do any thing more than could be legal-ly done by an ordinary administrator. As the law imposes a strict line of duty, the instrument is to be construed strictly, in regard to the conduct of the plain-tiffs; and unless they can clearly show a power to com-promise the debt, they must be made answerable for the amount. They must be judged according to the law of *England.* The insolvent law of this state (24th sess. c. 131. s. 10.) specially authorizes executors and administrators to become petitioning creditors of an in-solvent.

*Hopkins,* contra. This is not like the case of an ac-tion against an administrator for a *devastavit;* but I will consider it in that point of view. Though, gene-rally speaking, an executor or administrator cannot re-lease or compound a debt; yet if it is done for the be-nefit of the estate he is not made liable. In *Blue* v. *Marshall,** Lord Chancellor *Talbot* held that an adminis-trator who had released a tenant, who was insolvent, from the arrears of rent, on his giving up the posses-sion, was not responsible. It is just and reasonable that a beneficial compromise, made by an executor or ad-ministrator, should be allowed. It is fit and conve-nient that they should have this power; being answera-ble for its exercise in a manner beneficial to the es-tate. It is true, there are old cases to the contrary; and it was once held, that an executor, or administrator could not release the penalty of a bond on payment of the condition, without a *devastavit;* but the modern doctrine is more rational. In *Norden* v. *Levit,*† the court strongly inclined to the opinion that the com-pounding of an action of *trover* by an administrator was not a *devastavit.*

*Harison,* in reply. The case of *Blue* v. *Marshall* was in a court of *chancery,* where matters are decided

* 3 P. Wms. 381.

† 2 Lev. 189.

,on equitable principles. But we are in a court of law, where equitable circumstances are not taken into consideration. Whether the debtor was insolvent, or not, or whether the compromise was beneficial to the estate, or not, cannot be objects of inquiry in a court of law. It is enough that the plaintiffs have released the debt, so as to prevent the possibility of any future claim on the debtor. The rule of law is clear and settled, that if an executor or administrator submit a debt of 20 pounds to arbitration, and the arbitrators award only 10 pounds, it is a *devastavit*, and the executor or administrator is liable for the whole.

In *Norden* v. *Levit*,[*] the payment was affirmed in the house of lords, and the administrator held liable for a *devastavit*. It is said, that this is the doctrine of the old cases; yet no modern determinations in courts of law have been shown to the contrary. Indeed, the law is too well settled to admit of a doubt.

*Per Curiam.* The release of *Pomeroy's* debt by the plaintiff *Cornelia*, as administratrix, is a good defence in this action. It appears by the covenant, that she took out letters of administration in *England*, by agreement with the other parties to the covenant, for the express and sole purpose of collecting *Pomeroy's* debt; and in consideration of her doing this, she received a release and indemnity from the other parties. They were only to pay her the distributive share of her father's estate, in case *Pomeroy* should neglect or refuse to account and pay his debt. By releasing that debt, she has disabled herself from a remedy at law under the covenant. The breach contemplated by the parties has not occurred. The old and strict rule of law is, that an administrator cannot release a debt without being responsible for it; and though this rule has been relaxed in equity, as between the administrator or executor and the legatees or next of kin, (and, perhaps, the same relaxation ought to take place at law, if a court of

ALBANY,
Feb. 1811.

DE DIEMAR
v.
VAN
WAGENEN.

[*] 2 Lev. 189, 190. 1 T. Jones, 88.

ALBANY,
Feb. 1811.

JUMEL and
DESOBRY
v.
MAR. INS. CO.

law should take cognisance of claims between such parties,) yet here the plaintiff has not fulfilled the condition precedent to a right of action upon this covenant. If the whole scope and intent of the agreement be compared and taken together, its meaning appears evidently to be, that the plaintiff *Cornelia* was to invest herself with the power of an administratrix, for a specific purpose, which was not that she should exercise her discretion in collecting, compounding or releasing the debt of *Pomeroy.* It was merely that she should be vested with legal authority to demand and receive the debt. The administrators here never meant that she should assume or exercise any other or further power. To entitle herself to a remedy at law under this covenant, she was bound to execute this trust upon strict legal principles. By compounding the debt, she has taken it to herself, and judgment must be rendered for the defendant.        Judgment for the defendant.